OPINION
Jeffrey Richards was found guilty after a bench trial of obstructing official business, as proscribed by R.C. 2921.31. The trial court imposed a fine of $25 and costs. He assigns error as follows:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN THAT THE DECISION RENDERED FOUND THAT THE ELEMENTS OF THE CRIME HAD BEEN PROVEN BEYOND A REASONABLE DOUBT WHICH IS NOT SUPPORTED BY THE EVIDENCE AND IS IN CONFLICT WITH CURRENT, BINDING AND NON-BINDING CASE LAW."
The State's evidence consisted of the testimony of Darke County Sheriff's Deputy Wendy Fritz. She testified that she responded to a call at 3:00 a.m. concerning an underage drinking party at a residence in Hollansburg.
Upon arrival, she observed Richards and two others in the backyard. Richards was in a truck and Deputy Fritz was told he refused to leave. Deputy Fritz ordered Richards to remain where he was while she went inside with the other two people. Deputy Fritz was engaged in an "active investigation" and the order to Richards to remain where he was was based on Deputy Fritz's need to further talk with him because "(t)he complaints were against him." Deputy Fritz had taken Richards' driver's license from him before she went inside the residence.
While inside, Deputy Fritz learned from the residents that Richards had supplied the liquor for the party, giving her probable cause, "in (her) mind," to cite or arrest Richards for contributing to the delinquency of a minor.
When she exited the house, Deputy Fritz observed that the keys had been removed from Richards' truck and Richards had vanished. Deputy Fritz called for a tow truck which arrived 30-45 minutes after she had first encountered Richards and ordered him to stay where he was.
After the tow truck had arrived, Deputy Fritz again saw Richards and ordered him to stop several times. Deputy Fritz intended to either cite or arrest Richards at that time and he "ran to avoid arrest." Fritz did not tell Richards he was under arrest. Because she was unable to cite or arrest Richards when she ordered him to stop, Deputy Fritz and the sheriff's office were required to expend additional time and effort in serving a citation upon Richards
 "Q. Do you believe when you commanded him to stop several times that you were issuing a lawful or not a lawful order for him to do what you're requesting him to do?
"A. Lawful order.
"Q. Did he comply with your order? Yes or no?
"A. No.
 "Q. Okay. As a result of him failing to comply with your order when you told him to stop and he booked, he ran away, did you have to or someone have to issue these citations the next day?
"A. The same day, later that morning, yes.
 "Q. Okay. Would that trip have been necessary for you or any other officer if he had stayed there and you wrote the citations out at the scene and given them to him?
"A. No."
In finding Richards guilty, the trial court stated in part:
 "Well, the issue here is actually, I don't think the appropriate word anymore is probable cause. I'm not quite sure why when we left the words probable cause behind. It's articulable facts that indicate there's a possibility that a crime as (sic) been committed. I think that's the operative language."
 "I have some significant questions as to whether there was sufficient articulable facts when the first order to stay where you were was issued primarily because the officer wasn't sure who the owner of the property was so that there wasn't sufficient indication of trespass."
 "There certainly, however, was sufficient articulable facts in possession of the officer when she saw the Defendant the second time and ordered him to stop or stay where he was. And his failure to stop, while it may not have prevented the ultimate issuing of the citations, it did delay it which obstructed the officer in the performance of her public duty."
The State appears to agree with Richards' principal argument that if Deputy Fritz possessed no more than a reasonable, articulable suspicion of wrongdoing, Richards would not have been guilty of violating R.C.2921.31 by ignoring her command that he stop. Indeed, the Court of Appeals for Highland County has so held in State v. Gillenwater, (April 2, 1998), Highland App. No. 97 CA 0935, unreported. While we have reservations about the soundness of Gillenwater, we reluctantly conclude that the State's evidence was fatally deficient for a more fundamental reason.
The testimony tended to establish that Deputy Fritz had probable cause to believe that Richards had committed the offense of contributing to the delinquency of a minor by supplying liquor for an underage drinking party, and our review of Deputy Fritz's testimony satisfies us that such probable cause did exist.
The trial court confused the concepts of reasonable, articulable suspicion and probable cause, but where the evidence demonstrates probable cause, the trial court's confusion of concepts is not a basis for reversal. However, the trial court and the parties appear to have overlooked the fact that the first degree misdemeanor offense of contributing to the delinquency of a minor (R.C. 2919.24) was not committed in Deputy Fritz's presence. As such, the fact that she had probable cause to believe that Richards committed that offense would not have authorized her to cite or arrest him for that offense without her having first obtained an arrest warrant or summons in lieu of a warrant. See R.C. 2935.03(A)(1); Crim.R. 4(A).
Obstructing Official Business is defined at R.C. 2921.31(A):
 "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties." (Emphasis ours).
Richards' contentions as to the elements of the offense are (1) that he was privileged to ignore the command to stop and (2) that because Deputy Fritz had already obtained the information she had intended to seek from Richards from the residents, he did not prevent, obstruct, or delay Deputy Fritz's performance.
As a general proposition, we think that a person is not privileged to ignore a police officer's order to stop where the officer has probable cause to believe that the person has committed a crime. Here, Richards had been ordered to remain with his truck 30-45 minutes before Officer Fritz, having learned in the meantime that he had supplied the liquor for the party, ordered him to stop. The fact that Deputy Fritz was not then authorized to cite or arrest him, did not confer upon Richards a privilege to ignore her command that he stop. Richard's obedience of the command to stop may well have assisted Deputy Fritz in the performance of her lawful duties although, as explained below, his failure to stop — on this record — does not show that he hampered or impeded Deputy Fritz in the performance of her lawful duties.
It would appear — on this record — that Richards did not, in fact, prevent, obstruct, or delay Deputy Fritz's investigation because she did obtain from the residents the information she had intended to seek from Richards. Nevertheless, "a purpose to prevent, obstruct, or delay the performance . . . of any authorized act" is readily inferable from the evidence.
Where the State's case is fatally deficient is in its lack of proof on the question of whether Richard's ignoring Deputy Fritz's orders to stop "hamper(ed) or impede(d her) in the performance of (her) lawful duties." Emphasis ours. As the above-quoted passage of Deputy Fritz's testimony reveals, the only inconvenience to Deputy Fritz and the sheriff's office was the additional time and effort expended in serving Richards with a citation over what it would have been if she could have issued the citation at the scene.
However, as observed above, Deputy Fritz was not authorized to arrest or cite Richards without first obtaining an arrest warrant or summons in lieu of warrant for this misdemeanor she had not observed. Deputy Fritz had taken Richard's driver's license and there is no testimony that it did not contain his current address. Thus, there is no evidence that the time and effort necessary to serve the citation in this case was any greater than it would have been had Richards heeded Deputy Fritz's commands to stop. She was not authorized to arrest or cite him without a warrant or summons in lieu of warrant. Hence, Richard's ignoring the commands to stop did not hamper or impede Deputy Fritz's performance of a lawful duty. In the absence of any evidence that Richard's failure to stop resulted in any expenditure of time and energy that would not have normally been expended in obtaining a warrant or summons in lieu of warrant and serving it on an individual, the evidence fails to establish that Richard's failure to stop hampered or impeded Deputy Fritz's performance of her lawful duties.
The assignment of error is sustained.
The judgment will be reversed, and the defendant will be discharged.
YOUNG, J., concurs.